**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | CASE NO.: 2:06-cr-114-WHA |
| | ) | |
| RICARDO GONZALEZ-OROZCO | ) | |

**MOTION TO SUPPRESS AND CITATIONS OF AUTHORITY**

The Defendant, Ricardo Gonzalez-Orozco, ("Mr. Gonzalez"), by and through undersigned counsel, Christine Freeman, and pursuant to the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, moves this Court for an Order suppressing all evidence and all statements seized as a result of the following described illegal stop, search and/or seizure on April 10, 2006, at approximately 2:25 p.m., on Interstate I-65 near mile marker 162, in the Middle District of Alabama.

This evidence to be suppressed includes, but is not limited to,: (a) any and all physical evidence seized from the 1999 Oldsmobile Intrigue (bearing Georgia Vehicle Identification Number WD1J60); (b) any and all items seized from Mr. Gonzalez; ( c) any and all statements made by Mr. Gonzalez during and after any stop, search and/or seizure of the Oldsmobile and/or after Mr. Gonzalez' arrest; and (d) any and all evidence obtained as a result or "fruit" of any such search, seizure, and/or statements.

**Facts**

At an evidentiary hearing, the following facts would be established:

1. Mr. Gonzalez, is a 43 year old male, born in Guadalajara, Jalisco, Mexico on

April 19, 1963. Mr. Gonzalez is of Mexican decent and he does not speak or read English with fluency. Mr. Gonzalez has a sixth grade education and although he can converse in Spanish, he is not able to read with comprehension documents in English or Spanish.

2. On April 10, 2006, at approximately 2:25 p.m., the Oldsmobile Intrigue being driven by Mr. Gonzalez was pulled over on I-65 and stopped by Alabama State Troopers B. Hamrick and K. Cole ("Troopers Hamrick and Cole"). At the time of the stop, Juan Yanez-Vega, ("Mr. Yanez"), was riding in the passenger side of the vehicle.

3. The vehicle was in good condition and had no visible safety code violation (e.g. broken headlight) or mechanical defects (e.g. cracked engine). The vehicle was neither speeding nor driving erratically at the time of the stop.[1] Additionally, there was no sign of contraband in plain view within the vehicle.

4. On information and belief, the location on I-65 at which Mr. Gonzalez was stopped has been the site of numerous traffic stops by Trooper Hamrick and other Alabama state troopers, due to certain characteristics of the site and not due to any driving difficulties of the drivers stopped.

5. In response to inquiry from the troopers, Mr. Gonzalez got out of the car, came to the back of the vehicle, and discussed why the trooper alleged that he had stopped the car.

6. Mr. Gonzalez produced a bill of sale for the vehicle and a valid California driver's license. The troopers contacted the Blue Lightning Operations Center, the Bureau

---

[1] Although the Alabama State Trooper report regarding this stop indicates that Mr. Gonzalez's was stopped because his vehicle for "following too close."

2

of Immigration and Customs Enforcement, and the Montgomery HIDTA offices. The Customs agents reached by phone in turn directed the troopers to bring Mr. Gonzalez to the location of that office. Trooper Hamrick escorted Mr. Gonzalez to the HIDTA office.

7. According to the discovery produced by the Government in this matter, the purpose in bringing Mr. Gonzalez to the additional location was "for further investigation." (Bates Document page 1.)

8. After Mr. Gonzalez had been brought to the HIDTA office, ICE agents subsequently concluded that Mr. Gonzalez had previously been removed from the United States.

9. A search of Mr. Gonzalez resulted in the discovery of one or more Social Security card(s) in his possession.

10. Mr. Gonzalez was questioned and was asked his country of birth and citizenship. Thereafter, he was allegedly asked to review and sign a written *Miranda* rights waiver form, and gave a statement acknowledging that he had entered the United States illegally. He was asked about documents taken from his pocket, and acknowledged that he had used another name and a Social Security number to secure employment.

11. On April 11, a BICE detainer was lodged against Mr. Gonzalez, because "Investigation has been initiated to determine whether this person is subject to removal from the United States."

12. On or about April 20, 2006, the Customs agents were informed that a Social

Security card found with Mr. Gonzalez was counterfeit.

13. Although aware of Mr. Gonzalez-Orozco's Mexican citizenship, the authorities detaining him failed to notify the Mexican consulate of his arrest and failed to notify Mr. Gonzalez-Orozco of his right of access to the Mexican consulate, in violation of Article 36 of the Vienna Convention on Consular Relations, April 24, 1963, 21 U.S.T. 77

14. The information obtained is due to be suppressed because:

   a. The initial traffic stop was without probable cause, in violation of the Fourth Amendment right to be free from unreasonable seizures and searches;

   b. The initial traffic stop was pretextual, in violation of the U.S. Constitution's rights to due process and equal protection.

   c. The continued detention of Mr. Gonzalez was without probable cause, in violation of the Fourth Amendment.

   d. The interrogation of Mr .Gonzalez violated his rights under the Fifth and Sixth Amendments to be free of coercive interrogation.

   e. The interrogation of Mr .Gonzalez did not result from a knowing or voluntary waiver of his rights to silence and to counsel, under the Fifth and Sixth Amendments.

   f. Article 36 of the Vienna Convention on Consular Relations, April 24, 1963, 21 U.S.T. 77, requires that foreign nationals be informed of their right to contact their consulate upon arrest.

**Law**

The Fourth Amendment protects individuals from unreasonable searches and seizures. Const. Amend IV. "A traffic stop is a seizure within the meaning of the Fourth Amendment." *U.S. v. Purcell*, 2236 F. 3rd 1274 (11th Cir. 2001). The legality of traffic stops is analyzed under the standards articulated in *Terry v. Ohio*, 392, U.S. 1, 88 S.Ct. 1868 (1968)." *Id.* at 1277 (citations omitted).

In *United States v. Pruitt*, 174 F. 3rd 1215 (11th Cir. 1999), the Eleventh Circuit addressed the implication of the Fourth Amendment in a routine traffic stop and the application of the *Terry* standard. That standard requires that there be more than an "inchoate hunch" as the basis for the traffic stop.

In the present case, Troopers Hamrick and Cole's report indicates they initiated the traffic stop based on the vehicle "following too close." Based on all of the circumstances of this and other traffic stops at this location, the stop appears to be pretextual.

The Fifth and Fourteenth Amendment rights to due process and to equal protection prohibit selective enforcement of any laws based on the race of an individual or ethnic profiling. *Whren v. United States*, 517 U.S. 806, 116 S. Ct. 1769 (1996). See also, *Pruitt, supra*, 174 F.3d at 1221 ("being Mexican, having few pieces of luggage, being visibly nervous or shaken during a confrontation with a state trooper, or traveling on the interstate with Texas license plates (not yet a crime in Alabama), do not provide a minimal, particularized basis for a conclusion of reasonable suspicion on the part of [the officer]."

*See also, U.S. v. Arreola-Delgado*, 137 F. Supp. 2d 1240 (2001).

In addition, the Fourth Amendment prohibits continued detention of a vehicle and its occupants, once the traffic purpose of the stop has been completed, unless the traffic officer can point to `specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion.'" *Pruitt,* at 1219 (citations omitted); *United States v. Tapia*, 912 F.2d 1367, 1370 (11th Cir. 1990).

In *Pruitt*, the Court held that the detention and subsequent search of the defendants vehicle violated their Fourth Amendment rights. Specifically, the Court found that the questioning during the traffic stop for an alleged speeding violation should have been limited to questions regarding the driver's "license, registration and insurance papers." *Id.* at 1220. The Court found that there was no basis for a suspicion of criminal activity and therefore, additional questioning was irrelevant and a violation of *Terry*. *Id.*

Thus, in this case, even if Troopers Hamrick and Cole had a valid basis for the initial traffic stop, there was no basis to prolong the stop after the warning citation had been issued.

A defendant whose physical location is controlled by the police is in custody. *U.S. v. Grant*, 920 F.2d 376, 382 (6th Cir. 1991). Where a defendant has been interrogated while in custody, the prosecution may not use statements stemming from that interrogation "unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612 (1966). The prosecutor carries the burden to prove by a preponderance of the evidence that a valid

waiver was obtained. *North Carolina v. Butler*, 441 U.S. 369, 373 (1979). The government must show (1) "that the waiver was made in full awareness of the nature of the right being waived and the consequences of waiving," and (2) "that the waiver was voluntary in the sense that it was a product of free and deliberate choice rather than intimidation, coercion, or deception" based upon the totality of the circumstances. *United States v. Hernandez*, 93 F.3d 1493, 1501 (10th Cir.1996) (citing *Colorado v. Connelly*, 479 U.S. 157, 169- 70 (1986)).

In this case, the government's own reports establish that Mr. Gonzalez-Orozco was not provided with *Miranda* warnings until after his interrogation had begun and certain inculpatory statements had been provided.

In addition, the government may not use statements obtained involuntarily from a defendant. Physically "coercive factors, such as physical abuse or threats of physical violence, need not be present to support a determination of involuntariness." *Wainwright v. LaSalle*, 414 F.2d 1235, 1239 (5th Cir. 1969). In analyzing whether a defendant's will was overborne by the circumstances surrounding the giving of a confession, this Court must review the totality of the circumstances of the interrogation. *Dickerson v. United States*, 530 U.S. 428, 434, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000) (internal quotations and citation omitted). 18 U.S.C. § 3501(b) requires that the following factors be considered:

> (1) [T]he time elapsing between arrest and arraignment of the defendant making the confession, ... (2) whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession, (3) whether or not such defendant was advised or knew that he was not required to make any statement and that any such statement could be used against him, (4) whether or not such

   defendant had been advised prior to questioning of his right to the assistance of counsel; and (5) whether or not such defendant was without the assistance of counsel when questioned and when giving such confession.

18 U.S.C. § 3501(b).

  In the case of a foreign national, the voluntariness inquiry also includes assessment of the following factors: (1) whether the defendant signed a written waiver; (2) whether he was read his rights in his native language; (3) whether he appeared to understand those rights; (4) whether he had the assistance of a translator; (5) whether his rights were explained painstakingly; and, (6) whether he had experience with the American criminal justice system. *United States v. Garibay*, 143 F.3d 534, 536 - 538 (9th Cir.1998). Where a defendant was given incorrect or misleading information about the effect of a waiver, or was given incomplete information about the charges against him, the waiver is not adequate to permit use of the resulting statements. *U.S. v. Martinez*, 486 F.2d 15, 19 (5th Cir. 1973).

  Further, Article 36 of the Vienna Convention on Consular Relations, April 24, 1963, 21 U.S.T. 77, requires that foreign nationals be informed of their right to contact their consulate upon arrest. Where, as in this case, such information was not provided, there is further support for a finding that the defendant did not voluntarily waive his rights to silence or to counsel.

  In this case, the evidence will show that Mr. Gonzalez-Orozco was not provided adequate explanation of his rights to silence or counsel and did not understand those rights.

  **WHEREFORE**, the Mr. Gonzalez prays that all fruits of the illegal seizure, search

and interrogations conducted April 10, 2006 be suppressed. This evidence includes, but is not limited to:

(a)   any and all physical evidence seized from the 1999 Oldsmobile Intrigue on April 10, 2006;

(b)   any and all statements made by Mr. Gonzalez during or after any stop, search or seizure of the Oldsmobile Intrigue

(c)   any and all evidence obtained as a result or "fruit" of any such seizures or statements.

    Respectfully submitted,

    s/ Christine A. Freeman
    **CHRISTINE A. FREEMAN**
    Counsel for Mr. Gonzalez-Orozco
    FEDERAL DEFENDERS
    201 Monroe Street, Suite 407
    Montgomery, Alabama 36104
    Phone: (334) 834-2099
    Fax: (334) 834-0353
    E-mail: Christine_Freeman@fd.org
    TN Bar Code: 11892

**FEDERAL DEFENDERS**
**MIDDLE DISTRICT OF ALABAMA**
201 Monroe Street, Suite 1960
Montgomery, Alabama   36104
TEL:  (334) 834-2099
FAX:  (334) 834-0353

**CERTIFICATE OF SERVICE**

I hereby certify that on June 1, 2006, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

>Todd Brown, Esq.
>Assistant United States Attorney
>One Court Square, Suite 201
>Montgomery, Alabama 36104

>s/ Christine A. Freeman
>**CHRISTINE A. FREEMAN**
>**FEDERAL DEFENDERS**
>201 Monroe Street, Suite 407
>Montgomery, Alabama 36104
>Phone: (334) 834-2099
>Fax: (334) 834-0353
>E-mail: Christine_Freeman@fd.org
>TN Bar Code: 11892